Pike Holding Company, a New Jersey corporation v. Commissioner.
Pike Holding Co. v. Commissioner
Docket No. 31962.
United States Tax Court
1952 Tax Ct. Memo LEXIS 327; 11 T.C.M. (CCH) 110; T.C.M. (RIA) 52034; February 8, 1952
Meyer M. Semel, Esq., 60 Park Place, Newark, N.J., for the petitioner. Lester H. Salter, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax for the year 1946 in the amount of $2,947.43, and an addition to tax in the amount of $736.86, pursuant to Section 291 of the Internal Revenue Code, for failure to file a return as required by law. The only issue presently in dispute, apart from the addition to tax, is whether petitioner sustained a deductible loss in 1946 with respect to the stock which it held in its subsidiary, Pike's Toyland, Inc. A stipulation of facts has been entered into by the parties, and it is incorporated herein by reference as part of our findings. [The Facts] 1. Petitioner, a New Jersey corporation, was organized in 1937. At all times material, David Pike was president and his wife, Lena Pike, secretary and treasurer. Thirteen shares of petitioner's capital stock were issued, and, at all times material, twelve shares were owned *329 by David and Lena Pike and one share was owned by Philip Pike. No other shares have ever been issued. Pike's Toyland, Inc., was a New Jersey corporation, organized in 1931 for the purpose of engaging generally in the retail toy and stationery business. It purchased a going business from David Pike and Lena Pike. The consideration paid was its entire capital stock of 300 shares, of which 100 shares each were issued to David and Lena Pike, and 100 shares to a nominee; it also executed and delivered a chattel mortgage in the amount of $3,000 to David and Lena Pike. The principal officers of Pike's Toyland, Inc., at all times material, were David Pike, president and treasurer, and Lena Pike, secretary. David Pike died in January 1951. In 1937 all of the outstanding shares of stock in Pike's Toyland, Inc., were "assigned" to petitioner. The record is devoid of evidence as to the circumstances surrounding that transaction, whether it was a gift, a contribution to capital, a sale, or an exchange, and whether petitioner gave or undertook to give any consideration for these shares. In February 1946, Pike's Toyland, Inc., sold its retail toy and stationery business, and did not thereafter *330 engage in any business. After the sale, it had net assets in the amount of $6,837.56 which it paid over to petitioner during 1946. On or about December 23, 1946, petitioner, as the sole stockholder of Pike's Toyland, Inc., resolved to liquidate it forthwith, and a certificate of dissolution was thereafter filed in the office of the Secretary of State of the State of New Jersey. The certificates of stock were not formally cancelled. [Opinion] Petitioner asserts that it is entitled to a deduction in the amount of some $13,000 with respect to its stock in the Pike's Toyland, Inc. We think that petitioner has failed to show that it sustained any loss whatever. Section 111(a) of the Internal Revenue Code specifies that loss shall be computed as the excess of adjusted basis, as provided in Section 113(b), over the amount realized. Although we know the net amount realized in this case, petitioner has furnished us with no evidence whatever from which we might be able to determine the basis of the Pike's Toyland, Inc., shares in the hands of petitioner. We do not know what, if anything, petitioner paid for those shares; we do not know whether the circumstances *331 of its acquisition of the shares in 1937 were such that it inherited the basis that such shares previously had in the hands of David and Lena Pike under Section 113; and we do not even know what the basis of these shares was in the hands of David and Lena Pike. [1]
*332 The record before us is so utterly lacking in evidence upon which to conclude that petitioner sustained any loss, that we hold that petitioner is not entitled to the claimed deduction. It becomes unnecessary, therefore, to determine whether, even if a loss were sustained, it was not recognizable by reason of Section 112(b)(6) of the Code. Compare International Investment Corporation, 11 T.C. 678, affirmed, 175 Fed. (2d) 772 (C.A. 3). 2. There remains to be considered the question whether petitioner is liable for the $736.86 addition to tax. On March 15, 1947 petitioner was given an extension of time to April 15, 1947 to file its 1946 income tax return, conditioned upon the prior filing of a "tentative return". On the same day, March 15, 1947, petitioner filed Trasury Department Form 1120 marked "Tentative Return" with the collector of internal revenue for the fifth collection district of New Jersey. On April 17, 1947, it filed Treasury Department Form 1120, purporting to be its 1946 income tax return, with the collector of internal revenue for the fifth collection district of New Jersey. Only one principal officer of petitioner, David Pike, signed the *333 foregoing documents filed on March 15, 1947 and April 17, 1947. Section 52(a) of the Internal Revenue Code provides that "The return shall be sworn to by the president, vice-president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer". Since the purported returns herein were not sworn to by "the treasurer, assistant treasurer, or chief accounting officer", as required by Section 52(a), petitioner did not file a return as required by law for the year 1946. Cf. Uhl Estate Co. v. Commissioner, 116 Fed. (2d) 403 (C.A. 9); Lucas v. Pilliod Lumber Co., 281 U.S. 245. Therefore, in the absence of a showing of reasonable cause for failure to file a return as required, Section 291(a) makes mandatory the twenty-five per cent addition to tax. Cf. Plunkett v. Commissioner, 118 Fed. (2d) 644 (C.A. 1). Petitioner herein has not shown reasonable cause as required by the statute, and we have no alternative other than to conclude that the penalty is required by Section 291(a). Petitioner contends further that in any event the Commissioner is precluded by the limitations provisions of Section *334 275 from asserting the penalty. But the statute of limitations is an affirmative defense which must be specially pleaded, and petitioner has not raised this issue in its pleadings, nor has it hitherto undertaken, prior to its brief, to rely upon this issue. In the circumstances, the point is not open to it now. However, it may be noted that there is no merit to the contention. The period of limitation specified in Section 275 does not begin to run from the filing of an improper "return". ( Uhl Estate Co. v. Commissioner, supra), and furthermore petitioner executed a waiver, incorporated in the stipulation of facts, which rendered the action of the Commissioner timely, in any event. Decision will be entered for the respondent. Footnotes
1. As to the basis of the shares in the hands of David and Lena Pike, there was testimony by Lena Pike that David Pike had inventoried the stock and fixtures of the business in 1931 at "about $20,000", and from purported retained copies of the income tax returns of Pike's Toyland, Inc., for the years 1931 through 1945, the parties stipulated that the figure $20,437.76 appeared opposite the item "common stock" on the schedule entitled "balance sheet". But the foregoing can hardly establish a basis in the amount of $20,437.76, as contended by petitioner. We know nothing about the method employed in taking the inventory; we do not know what obligations, if any, were owned by the business; the $20,437.76 figure is merely a book entry and is certainly not a reliable guide to fair market value of the net assets in 1931, if the latter should be relevant; and, moreover, if the 1931 transaction was governed by Sections 112 (b) (5) and 113 (a) (6) of the Revenue Act of 1928, we have no information whatever as to what David and Lena Pike paid for the assets which they transferred to Pike's Toyland, Inc.↩