Annie L. STRAWDER, W. R. Strawder, Jr. and A. W. Boynton, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17891.

United States Court of Appeals Fifth Circuit.

April 22, 1960.

Llewellyn A. Luce, Washington, D. C., for petitioners.

Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Rollin H. Transue, Special Atty., Arch M. Cantrall, Chief Counsel, Internal Revenue Service, Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for respondent.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This petition for review from a decision of the Tax Court, finding deficiencies in petitioners' income taxes for the years 1950 and 1951 principally attacks findings of the Tax Court relating to the right of taxpayers, professional gamblers, to take substantial deductions represented by bets "laid off" to other gamblers.

The contentions of the parties can be rather briefly stated. Petitioners were engaged in running several lotteries, although the substantial sums here in issue related to the operation of the Orlando lottery. They received bets obtained by runners. These bets were on

numbers between zero and ninety-nine and winners were decided by ascertaining the last two digits of the weekly grand prize number in the Cuban lottery. Records of ordinary bets were kept by taxpayers, and, although the tax returns fell far short of reporting their true income even as reflected on their records, this part of the income and profits could be readily computed by comparing the "ins" with the "outs." After allowing deductions for commissions and expenses the Commissioner arrived at a figure representing the net income. In arriving at this figure he allowed deductions of certain "lay-offs" which were shown on taxpayers' records as having been made to Mathews-Shepherd. These items were shown in columns of taxpayers' records which provided for entries for "over-lay in" and "over-lay out".

For its first three weeks of 1950, weeks ending January 7, 14 and 21, the entries on this exhibit showed a substantial figure in each column, indicating that the amount represented in the "over-lay in" column had been bet through writers in excess of the limit allowed by the taxpayers to be written on certain "hot" numbers, and that the amount represented in the "over-lay out" column (also called "lay-offs") had been turned over to Mathews-Shepherd on a hedging operation. The amount of the "over-lay in" items was of course includible in gross income and the amount of the "lay-offs" was deductible from gross income. The taxpayers undertook to counter the Commissioner's determination that a large amount of income had not been reported by showing that a much larger amount of "lay-offs" had actually been made.

In all of the remaining weeks of the year 1950, with a single exception, there was a weekly entry in only one of the two columns. In all but four, the entry was in the "lay-off" column. In four instances the entry was in the "over-lay in" column. It is plain that the records of the Mathews-Shepherd, which the Tax Court held were more accurate and fully kept, showed that substantially larger sums were laid off by taxpayers with them than its single weekly entry in the "over-lay out" column of taxpayers' records indicated. From this the Tax Court deduced that the single entry represented a net figure, being the difference between the "over-lays in" and the "over-lays out." The Tax Court thus concluded that taxpayers were not entitled to take deductions of the total amount of the "over-lays out" as shown on Mathews-Shepherd's records, because, this additional amount would be balanced off by an equal amount that should have been shown in the "over-lay in" column.

■ The Tax Court found that $78,-106.25 lay-offs were actually made in addition to those allowed as a deduction, but it found that this sum should not be allowed as a deduction without the addition of a similar sum on the income side, since the lay-offs appearing on the records represented a net figure after matching "ins" with "outs".

■ Taxpayers attack this finding as unsupported in the record. We disagree. The testimony was that "over-lays in" occurred weekly and lay-offs with Mathews-Shepherd also occurred weekly. If the records were construed as contended for by taxpayers this would show that there were no "over-lays in" after the first three weeks, except for the five weeks mentioned. Moreover, the Mathews-Shepherd's records are in conflict with the taxpayers' single weekly figures of "over-lay out". In each instance the Mathews-Shepherd books show a considerably larger amount laid off by taxpayers with them than the single figures shown in the "over-lays out" column. They could both be correct only if the latter entry is a "net" figure rather than the total amount laid off to Mathews-Shepherd.

■■ We also conclude that the Commissioner's determination includes these same figures as found by the Tax Court. The determinations are thus clothed with the statutory presumption of correctness and the burden is on the petitioners to prove them incorrect. This disposes of the item of $78,106.25. The other ma-

terial claim by the taxpayers is that they made lay-off bets with others in 1951 after Mathews-Shepherd closed down. No records were kept as to such lay-off, either by taxpayers on a "net" basis or by those with whom they claimed to deal. The Tax Court had observed "that Strawder's testimony and demeanor on the witness stand made a bad impression on us, much of his testimony was vague, evasive, and contradictory." The Tax Court refused to credit taxpayers' unsupported claims for some $24,300 claimed by them to have been laid off with others in 1951. Since their books did not disclose any such payments, which is of itself material evidence against taxpayers, and in the absence of any other support, the Court could legally reject this contention.

There is one item, however, of $4,590 as to which it appears that the Tax Court failed to follow its own theory in "netting" the weekly entries of the lay-off bets with Mathews-Shepherd. For the first three weeks of 1951 these entries showed a single figure of lay-off bets, as was shown for most of the weeks of 1950, above described. However, the Tax Court found a larger figure as having been laid off for these three weeks (as was the case for all of 1950). Without increasing the deductions correspondingly, the Court added to income the amount shown by Mathews-Shepherd's books to have been laid off to them. This appears to be inconsistent with the finding of the Court that the single entry was a net figure. If it was, then this income would have been reflected as an ingredient in reaching a net item in the single entry shown on the records. We conclude that the deficiency determined by the Tax Court for the partnership in 1951 was too great to the extent of $4,590.

We conclude that the evidence fully warranted imposition of penalties except the penalty determined against Boynton under 26 U.S.C.A. § 294(d) (2). See Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127.

The decision of the Tax Court is affirmed except as to the item of $4,590 for 1951 partnership income and the § 294(d) (2) penalty against taxpayer Boynton.

The case is Remanded to the Tax Court for further and not inconsistent proceedings.