**Nell La Compte REAVES, as Executrix of the Will of Jesse Ullman Reaves, Deceased, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18584.**

United States Court of Appeals
Fifth Circuit.

Oct. 24, 1961.

Vincent F. Kilborn, Mobile, Ala., for appellant.

Hart H. Spiegel, Chief Counsel, Rollin H. Transue, Sp. Atty., I. R. S., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lloyd J. Keno, Atty., Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Fred E. Youngman,

Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Jesse Ullman Reaves petitioned this Court to review and set aside a decision of the Tax Court finding deficiencies in his income tax and additions to tax for the years 1942 to 1947, inclusive. The Tax Court's findings and opinion are reported in Reaves v. Commissioner, 31 T.C. 690. While the petition for review was pending Jesse Ullman Reaves died. On motion, Nell La Compte Reaves, as Executrix of the Will of Jesse Ullman Reaves, deceased, was substituted as Petitioner. For convenience we will herein refer to Jesse Ullman Reaves as the taxpayer.

The taxpayer was graduated a Doctor of Medicine in 1908. In 1910 he established himself in the practice of his profession in Mobile, Alabama, where he became widely recognized as a specialist in the field of urology. The income tax returns of the taxpayer came under the scrutiny of the Internal Revenue Service. The taxpayer filed returns for the years 1942, 1943, 1945, 1946 and 1947. The taxpayer also filed an income tax form for 1944, on which income and deduction items had been entered and a tax computation had been made. The Internal Revenue Agent who was assigned to investigate the taxpayer's tax liability found himself unable to ascertain the amount of income from the books and records which were made available to him. He undertook to ascertain income by the bank deposits method. It was claimed by the taxpayer that he had a large amount of cash in a safe deposit box at the beginning of the years in question and that this cash was withdrawn and placed in the bank account from time to time in comparatively small sums. The Agent disregarded this claim.

The Agent made an analysis of the taxpayer's deposits to and withdrawals from his bank accounts, and in so doing he reckoned transfers from one account to another, sales and purchases of investment properties, and other transactions. The Agent accepted as correct the taxpayer's deductions as reflected in his returns and estimated living costs at $7,500 per year. To the extent that disbursements for items claimed as deductions and for living costs were not covered by cancelled checks, the Agent treated them as having been made from undeposited receipts of income. The Agent recommended the assessment of tax deficiencies aggregating $86,379.03, fraud penalties of $44,086.89, and a 25% penalty of $5,227.-87 for failure to file a return for the year 1944. The Commissioner adopted the report of the Agent. The Tax Court made a number of adjustments but sustained the use of the bank deposit method in the determination of the taxpayer's income. The Tax Court found that the taxpayer's living expenses did not exceed $6,000 per year, and that at the beginning of the tax period there was an accumulation of $20,000 in currency in the taxpayer's safe deposit box. In a lengthy opinion the Tax Court reviewed and analyzed the evidence. It is not necessary that we do so.

The taxpayer, by his petition for review of the Tax Court's decision, challenges the determinations of tax deficiencies and asserts that if there were any tax deficiencies no part thereof was due to fraud. The statute of limitations is urged as a bar to asserting any tax liability for the years involved. The contention was made that the penalty for failure to file a return for 1944 was not properly imposed, and that it was error to impose, for the year 1944, both a penalty for failure to file a return and a fraud penalty. The petition for review was filed on August 17, 1959. More than a year later, on September 20, 1960, the taxpayer filed a statement of "profits to be considered on appeal." In this document two grounds were asserted, one that the Tax Court wrongfully imposed both penalties for the year 1944, and two, that the Tax Court erred in applying the mechanics of the bank deposits method of ascertaining income in four designated respects. The taxpayer's brief, filed February 23, 1961,

set up his contentions in still another manner. In the brief the points are, first, that the unsigned form was a "return" so as to start the running of the statute of limitations and no penalty could be imposed for failure to file; and second, that "The bank deposits and expenditures method of determining taxable income is improperly applied when no account is made of assets claimed by the taxpayer to be available at the beginning of the period under consideration for reinvestment and when a fictitious and assumed 'undeposited cash on hand' is arrived at by disregarding checks payable to cash and disregarding checks for expenditures claimed as deductions but which are not legally deductible."

■ The taxpayer is urging that the unsigned return was a return such as would comply with the statutory requirements with the result that the penalty for failure to file [1] could not be imposed. In support of his position the taxpayer relies upon Miller v. Commissioner, 5 Cir., 1956, 237 F.2d 830. In the Miller case the taxpayer had authorized his wife to sign his name to the return and she had done so. The Court distinguished the case of Plunkett v. Commissioner, 1 Cir., 1941, 118 F.2d 644. In the Plunkett case, as in the case before us, the form of return filed was not signed, nor was it verified as was then required by the statute. It was held that the penalty for failure to file was properly imposed. Without a signature it can hardly be said that a return contained or was verified by a written declaration that it is made under the penalties of perjury as required by the Internal Revenue Code.[2] We think it was correctly decided that no return was filed for the year 1944. See Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350.

■ We think there is no merit in the taxpayer's contention that double penalties are unauthorized. Bryan v. Commissioner, 5 Cir., 1954, 209 F.2d 822, certiorari denied 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715; United States v. Ridley, D.C. N.D.Ga.1954, 127 F.Supp. 3; Dixon v. Commissioner, 28 T.C. 338. Nothing contrary to this view is held in Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127, or in Strawder v. Commissioner, 5 Cir., 1960, 277 F.2d 753. The change of the rule effected by the 1954 enactment [3] has no retroactive operation.

■ The taxpayer asserts that the bank deposits and expenditures method of computation, as here applied by the Commissioner and the Tax Court, did not establish that the taxpayer failed to report income, or that, if there was a failure to report income, fraud was established. The facts, as found by the Tax Court and set forth in its opinion show substantial unreporting of income over the years in question under such circumstances as to show that it was done intentionally. The deficiencies of income were established by the evidence and the Tax Court's findings on that issue, supported as they are by substantial evidence, are sustained. Brame's Estate v. Commissioner, 5 Cir., 1958, 256 F.2d 343. On the fraud issue the Commissioner has the burden of proof. 26 U.S.C.A. (IRC 1939) § 1112; Cefalu v. Commissioner, 5 Cir., 1960, 276 F.2d 122; Carter v. Campbell, 5 Cir., 1959, 264 F.2d 930; Woodham v. Commissioner, 5 Cir., 1958, 256 F.2d 201; Goldberg v. Commissioner, 5 Cir., 1956, 239 F.2d 316. Evidence as to the keeping of three sets of income records, the entry on the books of lesser sums than were billed to and paid by patients, as well as the continuous and substantial underreporting of income and other evidence before the Tax Court were sufficient to meet the burden of proof on the fraud issue. Cefalu v. Commissioner, supra; Woodham v. Commissioner, supra; Archer v. Commissioner, 5 Cir., 1955, 227 F.2d 270; Kilpatrick v. Commissioner, 5 Cir., 1955, 227 F.2d 240; Lee v. Commissioner, 5 Cir., 1955, 227 F.2d 181; Bryan v. Commissioner,

1. 26 U.S.C.A. (I.R.C.1939) § 291.

2. 26 U.S.C.A. (I.R.C.1939) § 51(a).

3. 26 U.S.C.A. (I.R.C.1954) § 6653(d).

supra. If any doubt existed as to whether fraud had been established, that doubt would be dispelled by the plea of guilty entered by the taxpayer to criminal fraud charges with respect to the years 1945, 1946 and 1947. 10 Mertens Law of Federal Income Taxation 77 et seq., § 55.18; Gleis v. Commissioner, 24 T.C. 941, affirmed 6 Cir., 1957, 245 F.2d 237.

Having reached the conclusion that the Tax Court's determination of the issues is free from error, its decision is

Affirmed.