MARIA ELENA FERNANDEZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fernandez v. Commissioner
Docket No. 3702-92
United States Tax Court
T.C. Memo 1993-586; 1993 Tax Ct. Memo LEXIS 602; 66 T.C.M. (CCH) 1563; December 14, 1993, Filed *602 Decision will be entered under Rule 155. Maria Elena Fernandez, pro se. For the respondent: Clifton B. Cates III. DAWSON, NAMEROFF
DAWSON; NAMEROFF
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) of the Code [1] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined a deficiency in petitioner's 1988 Federal income tax in the amount of $ 13,912, plus additions to tax under section 6653(a)(1) in the amount of $ 696 and under section 6661 in the amount of $ 3,478. After various concessions by the parties, the issues for decision are: (1) Whether petitioner failed to report $ 24,919 in income as determined *603 by respondent's bank deposits method of reconstruction; (2) whether petitioner is entitled to deduct various Schedule C expenses for the taxable year 1988 in excess of the amounts allowed by respondent; (3) whether petitioner is entitled to a deduction for interest on Schedule A in excess of the amount allowed by respondent; and (4) whether petitioner is liable for the additions to tax. [2]
Some of the facts have been stipulated and are so found. At the time of the filing of the petition herein, petitioner resided in Bell Gardens, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Bank Deposit Reconstruction of Income
During 1988, petitioner was self-employed as a distributor of Jafra Cosmetics, Inc. Petitioner's compensation *604 was primarily derived from sales of cosmetics to customers and from commissions based on the sale of cosmetics by persons ("consultants") recruited by her. When a consultant was recruited, the consultant would purchase a product sample kit and was issued a case number. Often, as a promotional tactic, petitioner would pay for the product sample kit. In 1988, petitioner recruited approximately 33 new consultants. At the end of 1988, petitioner had 289 consultants whose sales produced commission income for her. In the notice of deficiency, based on a bank deposits method of computation to reconstruct petitioner's gross receipts, respondent determined that petitioner had bank deposits totaling $ 75,395, less reported income in the amount of $ 50,476, resulting in unexplained bank deposits in the amount of $ 24,919. Subsequent to the issuance of the notice of deficiency, the parties stipulated that petitioner had bank deposits totaling $ 92,154.82, less (1) redeposits in the amount of $ 1,780, (2) child support in the amount of $ 3,120, and (3) reported income in the amount of $ 50,476. Thus, at the commencement of the trial, petitioner's unexplained bank deposits totaled $ 36,778.82. *605 Taxpayers must keep adequate records and, in their absence, the Commissioner may determine a taxpayer's income by a method which clearly reflects income, including the bank deposits method of income reconstruction. Secs. 446(b), 6001; Parks v. Commissioner, 94 T.C. 654; 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057 (1978). Petitioner has the burden of proving that unexplained deposits do not represent income. Rule 142(a); DiLeo v. Commissioner, 96 T.C. 858, 869 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Reaves v. Commissioner, 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961). At trial, petitioner testified that many of the consultants did not have checking accounts. Thus, they would give petitioner cash for the products they wished to purchase from Jafra and petitioner would deposit the money to her bank account and write a corresponding check to Jafra. Petitioner further testified that when she was making payments on behalf of her consultants, she would write the consultant's name and account *606 number on the check. The parties stipulated that for 1988 there were checks written to Jafra meeting petitioner's description in the total amount of $ 22,949.41. We find petitioner's testimony to be credible. Accordingly, we find that $ 22,949.41 of the unexplained deposits are attributable to nontaxable amounts received from petitioner's consultants. However, with respect to the remaining $ 13,829.41, petitioner has not adequately explained the source of such deposits. Thus, based on this record, we hold that petitioner had unreported taxable income in the amount of $ 13,829.41. Schedule C Expenses
Petitioner claimed expenses on her Schedule C for 1988 in the amount of $ 20,152. In the notice of deficiency, respondent disallowed $ 14,414 of the amount claimed based on lack of substantiation. After concessions by the parties, the following items remain in dispute: Claimed
Substantiated
Insurance
$ 2,180
$   771
Office expense
2,400
1,303
Rent
3,354
1,774
Repairs
300
0
Travel
3,940
2,542
Telephone
1,185
0
We must decide whether petitioner properly claimed business expense deductions for her commission and sales business. Deductions are strictly *607 a matter of legislative grace, and petitioner bears the burden of proving she is entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed deductions are not adequately substantiated, we may estimate them when we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). 1. Car Expenses[3]
Petitioner claimed $ 2,180 for insurance, $ 300 for repairs, and $ 2,000 for lease payments on a 1984 Dodge Caravan on her Schedule C, all of which was disallowed in the notice of deficiency. (We note that $ 1,364 claimed on Schedule C as "car and *608 truck expense" was not disallowed. We assume, due to respondent's concessions herein, that such deduction was based on actual expenses, and not a mileage allowance.) The parties stipulated that petitioner paid $ 1,880.75 for automobile insurance and $ 2,675 for the leasing of the Dodge Caravan. During preparation for trial, respondent determined that petitioner's automobile was used 41 percent for business and conceded that petitioner is entitled to a deduction of $ 771 for automobile insurance and $ 1,097 for lease payments on the Dodge Caravan. Petitioner now contends that 60 percent of the usage of the vehicle was for business purposes. No repair records were submitted in evidence. For tax years beginning after December 31, 1985, we are precluded from estimating deductions for local use of vehicles. Walker v. Commissioner, T.C. Memo. 1992-416. Section 274(d)(4) provides that no deduction is allowable with respect to any listed property unless certain substantiation rules are met. Listed property, as defined in section 280F(d)(4)(A)(i), includes any passenger automobile. Petitioner must substantiate the amount of each separate expenditure (i.e., *609 repairs and gasoline), the amount of business and total use (i.e., mileage) of the car, the date of the expenditure or use, and the business purpose for the expenditure or use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Petitioner has failed to meet the stringent substantiation requirements of section 274 because she maintained no records, such as a mileage log, which would indicate that the business usage of her car was more than 41 percent, as determined by respondent. [4] With respect to the remaining amount claimed for insurance, petitioner offered no evidence as to the purpose for the expenditure. Accordingly, after taking into account respondent's concessions, we sustain respondent on these issues. *610 2. Rent
Petitioner claimed $ 1,354 on her Schedule C as rental expense for an office used for her business activities. At trial, respondent conceded that such amount was, in fact, paid by petitioner during 1988. However, respondent contends that petitioner is entitled to a deduction only in the amount of $ 677 as she and her sister jointly leased the property, and, thus, petitioner's sister paid half the rent. At trial, petitioner testified that although she and her sister had jointly leased the office, her sister did not use the office during 1988 and had ceased paying rent. We find petitioner's testimony to be credible. Accordingly, petitioner is entitled to $ 1,354 for rent on business property. 3. Travel
Petitioner claimed $ 3,940 for travel on her Schedule C. In the notice of deficiency, respondent disallowed $ 2,495 of the amount claimed on the return. At trial, respondent conceded an additional $ 1,097. Thus, the remaining $ 1,398 is in dispute. Petitioner testified that she was required to go to San Antonio, Texas, and New Orleans, Louisiana, for Jafra training, and that the amount claimed represented the unreimbursed portion of her trips. Section 274(d) *611 requires that the taxpayer substantiate expenses claimed for travel and entertainment by adequate records to corroborate her own testimony as to (1) the amount of the expense, (2) the time and place of travel or entertainment, (3) the business purpose of the entertainment or travel, and (4) the business relationship to the taxpayer of each person entertained. Sec. 1.274-5(b), Income Tax Regs. In this case it was incumbent on petitioner to prove expenditures in excess of those conceded by respondent, which required proving the detail of those amounts also. The Court is not permitted to approximate deductions for travel expenses. Sanford v. Commissioner, 50 T.C. 823, 828 (1968), affd. 412 F.2d 201 (2d Cir. 1969). At trial, petitioner failed to present any evidence, such as receipts, which meet the requirements of section 274. Accordingly, we sustain respondent on this issue. 4. Office Expense
Petitioner claimed $ 2,400 for office expense on her Schedule C. She testified that the amount claimed for office expense was for the purchase of promotional sample kits which were then given to her new consultants without *612 charge. At trial, respondent conceded $ 1,303 of the amount claimed by petitioner. Based upon the evidence presented, petitioner's canceled checks and books and records, we conclude that petitioner is entitled to an additional $ 1,112.08 for office expense. Accordingly, petitioner is entitled to a deduction in the total amount of $ 2,415.08 for office expense. 5. Utilities
Petitioner claimed $ 1,185 for utilities on her Schedule C. She testified that the amount claimed was attributable to utilities for her office and a portion of the telephone charges on her home phone. With respect to utilities for her office, petitioner offered no testimony as to either the utilities she was responsible for under the terms of the lease or the amount paid for such utilities. Accordingly, we have no basis upon which to make a determination as to the amount, if any, of utility charges incurred for her office. With respect to her home telephone, it is well established that no deduction is allowed for a taxpayer's telephone if the primary purpose is personal, rather than business. Rowell v. Commissioner, T.C. Memo. 1988-410, affd. 884 F.2d 1085 (8th Cir. 1989). *613 Petitioner's telephone bills reflect total payments in 1988 of $ 980.12, of which approximately $ 400 pertained to monthly basic home service. In addition, some calls were identified by petitioner as personal. Based on petitioner's testimony, we believe that she used her telephone to call Jafra and her consultants. However, the charges for her basic home service would have been incurred regardless of her business activities, and we are not convinced that all the remaining long distance and zone charges were business related. Accordingly, based on this record, we allow petitioner $ 150 for telephone expense. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Schedule A -- Interest
For 1988, petitioner claimed Schedule A home interest expense in the amount of $ 8,311. Respondent disallowed $ 2,605 for lack of substantiation. At trial, petitioner offered no testimony as to the disallowed home interest expense. Moreover, although this case was continued twice, petitioner failed to present any evidence to substantiate the additional amount claimed for home interest *614 expense. Accordingly, based on this record, we sustain respondent on this issue. [5]
Section 6653(a)(1) Addition to Tax
Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner also has the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). The record establishes that petitioner was negligent. Inadequate books *615 and records were maintained to support the amounts claimed on the tax return. Accordingly, we hold for respondent on this issue. Section 6661 Addition to Tax
Respondent determined an addition to tax for substantial understatement of tax under section 6661. Section 6661 provides a 25-percent addition to tax if there is a substantial understatement of income tax. An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown for the taxable year or $ 5,000. An understatement does not include an amount attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment". Sec. 6661(b)(2)(B)(i). Additionally, an understatement does not include any item for which there was adequate disclosure. Sec. 6661(b)(2)(B)(ii). Petitioner presented no evidence or argument concerning this addition to tax, and the record does not demonstrate that either reduction under section 6661(b)(2)(B) applies. Further, the record does not show that respondent abused her discretion by failing to waive some or all of the addition to tax, or that petitioner requested such a waiver. Sec. 6661(c); Mailman v. Commissioner, 91 T.C. 1079 (1988). *616 Accordingly, if recomputation of petitioner's tax liability reflects a substantial understatement, petitioner is liable for this addition to tax. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Adjustments to the amounts of deductible medical expenses and self-employment tax are computational and dependent upon the resolution of the other issues.↩
3. This category includes the entire amount claimed on petitioner's Schedule C for insurance and repairs, and a portion of the amount claimed for rent.↩
4. At trial, petitioner offered into evidence a computer-generated mileage log which summarized the information purportedly contained in her 1988 "agenda". Such document was prepared several days before trial. Respondent objected to the admittance into evidence of such document based on the ground that petitioner was specifically directed by the Court to give respondent all evidence which she had, and neither the document nor the agenda had been provided to respondent. Moreover, the agenda was not available at trial. The Court sustained respondent's objection.↩
5. The only evidence offered on this subject pertained to personal interest (credit cards, installment loans, etc.). However, no personal interest deduction was disallowed in the notice of deficiency, and the parties stipulated that petitioner is entitled to an additional $ 121 for personal interest expense claimed on Schedule A.↩