LORAS L. STEINES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steines v. Commissioner
Docket No. 13714-90
United States Tax Court
T.C. Memo 1991-588; 1991 Tax Ct. Memo LEXIS 638; 62 T.C.M. (CCH) 1331; T.C.M. (RIA) 91588; December 2, 1991, Filed *638 Decision will be entered under Rule 155. Loras L. Steines, pro se. Scott M. Estill, for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's Federal income tax for the year 1988 in the amount of $ 8,869 and additions to the tax for that year as follows: Sec. 6653(a)(1)
Sec. 6651(a)(1)
Sec. 6661(a)
Sec. 6654(a)
$ 443
$ 672
$ 672 $ 128 Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession, [1] the issues remaining for decision are: 1. Whether petitioner's purported business, "All You Can Do Is All You Can Do," incurred legal and professional services expenses for the taxable year 1988 in the amount of $ 111,111,111,111, as claimed on the Schedule C attached to the Form 1040 filed by petitioner for 1988; 2. Whether the Form 1040 filed by petitioner for 1988 was frivolous and failed to constitute a valid Federal income tax return so that petitioner is liable for the delinquency addition under section *639 6651(a)(1) for failure to file a return; 3. Whether petitioner is liable for the addition to tax under section 6653(a)(1) for negligence or disregard of rules or regulations; 4. Whether petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax; and 5. Whether the Court should require petitioner to pay a penalty to the United States under section 6673. FINDINGS OF FACT [2]
*640 At the time he filed his petition in this case, petitioner resided in Moline, Illinois. During the year 1988, petitioner was employed by John Deere Harvester in East Moline, Illinois. On or about April 15, 1989, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for the tax year 1988. On that Form 1040, petitioner reported income from wages, salaries, tips, etc. of $ 43,636 and claimed a business loss of ($ 100,000,000,000), a negative adjusted gross income in the amount of ($ 99,999,956,364), and zero taxable income for the year. Petitioner reported a total tax liability of zero for the year 1988. Petitioner signed the Form 1040 under penalties of perjury. Attached to the Form 1040 filed by petitioner was a Schedule C for a business called "All You Can Do Is All You Can Do." That Schedule C reported gross receipts or sales of zero and legal and professional services expenses of $ 111,111,111,111 and claimed a net loss of ($ 111,111,111,111). Petitioner's purported business, "All You Can Do Is All You Can Do," did not exist during the tax year 1988. Petitioner's purported business did not incur legal and professional services expenses in the amount of $ 111,111,111,111 *641 or any other amount for the year 1988. [3]
Also attached to the Form 1040 filed by petitioner for the tax year 1988 was another Schedule C for a purported business called "Frivolous - Disability and The Cover Ups." That Schedule C reported gross receipts or sales of $ 11,111,111,111 and net profit of $ 11,111,111,111. [4] Petitioner's purported business, "Frivolous - Disability and The Cover Ups," did not exist during the tax year 1988 and did not have a net profit of $ 11,111,111,111 or any other amount. *642 Petitioner did not maintain any books, records, or other documents for either "All You Can Do Is All You Can Do" or "Frivolous - Disability and The Cover Ups." During the tax year 1988 petitioner received wages of $ 41,406.95 from John Deere Harvester in East Moline, Illinois. He also received nonemployee compensation of $ 1,810.66 from Massachusetts Indemnity and Life Insurance Company and $ 418 from First American National Securities, Inc. that year. Petitioner had total income of at least $ 43,635.61 for the year, and reported on line 7 of the Form 1040 $ 43,636 in "Wages, salaries, tips, etc." An amount of $ 6,182.56 in Federal income tax was withheld from petitioner's wages at John Deere Harvester during 1988. Petitioner was not entitled to a refund of the $ 6,182.56 that was withheld from his wages that year. Petitioner did not have business losses of ($ 100,000,000,000) that year. Petitioner did not have a negative adjusted gross income of ($ 99,999,956,364) for that year. His tax liability for the year was $ 8,869, of which $ 6,182.56 was withheld from his wages and $ 2,686.44 should have been paid when he filed his Form 1040 for the year. By statutory notice *643 of deficiency dated March 27, 1990, respondent determined a deficiency in petitioner's Federal income tax for the year 1988 in the amount of $ 8,869. Respondent also determined a negligence addition under section 6653(a)(1) in the amount of $ 443 computed on an underpayment in the amount of $ 8,869. [5] Respondent further determined an addition under section 6651(a)(1) in the amount of $ 672 for failure to file a return. [6] Respondent also determined an addition to tax under section 6654 in the amount of $ 128 for failure to pay estimated income tax. Petitioner timely petitioned this Court to redetermine the above deficiency and additions to tax. *644 OPINION Petitioner bears the burden of proof in this case and must establish any error in the Commissioner's determinations. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner has failed to carry his burden. Indeed, petitioner has not presented any evidence, documentary or testimonial, in regard to his tax liability for the year before the Court. At most petitioner has presented some fragmentary items in regard to the number of withholding allowances he has claimed at various times in years prior to and subsequent to the year before the Court. These Forms W-4 and the number of withholding allowances he may have claimed simply have no bearing on the issues as to petitioner's taxable income for the year 1988. Petitioner having failed to present any probative evidence, the Court must sustain the deficiency determined in the deficiency notice. [7]
*645 Section 6653(a) provides an addition to tax for negligence or disregard of rules or regulations. [8] The taxpayer has the burden to establish that the underpayment of tax was not due to his negligence or disregard of rules or regulations. Bixby v. Commissioner, 58 T.C. 757 (1972); Rosano v. Commissioner, 46 T.C. 681 (1966). Petitioner has not carried his burden. Moreover, the record in this case amply supports a finding of both negligence and disregard of rules or regulations. The preposterous claims on the two Schedules C that resulted in petitioner's reporting zero tax liability demonstrate that petitioner made no reasonable attempt to file a proper return. He intentionally understated his tax liability *646 for 1988 and intentionally failed to pay the tax that he knew or should have known was due and owing for that year. The Court sustains the negligence addition. Section 6654 provides an addition to tax for underpayment of estimated income tax, subject to certain specific statutory exceptions. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071 (1960). Petitioner has not tried to bring himself within any of the specific exceptions. Accordingly, the Court sustains the addition to tax under section 6654. Respondent also determined an addition to tax under section 6651(a)(1) for failure to file a return. Underpinning this delinquency addition is respondent's view that the Form 1040 filed by petitioner on or about April 15, 1989, did not constitute a Federal income tax return under the Federal tax laws and regulations. The Supreme Court on a number of occasions has considered the essential elements of a valid tax return, usually for purposes of the statute of limitations. Badaracco v. Commissioner, 464 U.S. 386, 78 L. Ed. 2d 549, 104 S. Ct. 756 (1984); Commissioner v. Lane-Wells Co., 321 U.S. 219, 88 L. Ed. 684, 64 S. Ct. 511 (1944); *647 Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 79 L. Ed. 264, 55 S. Ct. 127 (1934); Lucas v. Pilliod Lumber Co., 281 U.S. 245, 74 L. Ed. 829, 50 S. Ct. 297 (1930); Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 74 L. Ed. 542, 50 S. Ct. 215 (1930). This Court has distilled the essence of the Supreme Court's test and applied it to determine whether or not a particular document constitutes a tax return for purposes of section 6651(a)(1). Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986). Those essential elements, as set out in Beard, are as follows: First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury. (82 T.C. at 777.)
We apply that test to this case. The Form 1040, U.S. Individual Income Tax Return, is, of course, the form prescribed by respondent for use by an individual taxpayer such as petitioner to make a return of his taxes. See Commissioner v. Lane-Wells Co., supra. *648 Here petitioner did not tamper with or alter the Form 1040 as was done in Beard v. Commissioner, supra.The document appeared to be and purported to be petitioner's tax return. The Form 1040 filed by petitioner was signed by him under penalties of perjury, which is another of the prerequisites for a proper tax return. United States v. Moore, 627 F.2d 830, 834 (7th Cir. 1980); Beard v. Commissioner, 82 T.C. at 777; Cupp v. Commissioner, 65 T.C. 68, 78-79 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). Petitioner signed the return under penalties of perjury, declaring that: I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete * * *.
Petitioner obviously knew that the Schedules C were not "true, correct, and complete." He obviously knew that he had not incurred a business loss of ($ 100,000,000,000) as claimed on line 12 of the Form 1040. Thus, it could be said that petitioner had not made a good faith effort to report his income and to determine his *649 proper tax liability. Counts v. Commissioner, 774 F.2d 426, 427 (11th Cir. 1985), affg. a Memorandum Opinion of this Court; United States v. Mosel, 738 F.2d 157, 158 (6th Cir. 1984); Moore v. Commissioner, 722 F.2d 193, 195 n.2 (5th Cir. 1984), affg. a Memorandum Opinion of this Court; United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980); Beard v. Commissioner, supra.However, it is only as to the ridiculous Schedules C that it can be said that petitioner did not make an honest and reasonable attempt to satisfy the requirements of the tax law. Stripping away the preposterous claims on the Schedules C and the preposterous claim on line 12 of the Form 1040, petitioner satisfies at least three elements required for a valid return. The only issue remaining is whether he satisfies the fourth element, i.e., whether there was sufficient data to calculate petitioner's tax liability. While petitioner's return was patently frivolous in part, such return could be audited and his proper tax liability could be and was rather readily determined. This return is unlike those protester *650 returns that contain frivolous Fifth Amendment or other frivolous constitutional and legal claims and that contain no information or figures from which a determination of tax liability can be made. Morgan v. Commissioner, 807 F.2d 81, 83 (6th Cir. 1986), affg. a Memorandum Opinion of this Court; United States v. Mosel, 738 F.2d at 158; Edwards v. Commissioner, 680 F.2d 1268, 1269-1270 (9th Cir. 1982), affg. a Memorandum Opinion of this Court; United States v. Rickman, 638 F.2d at 184; United States v. Moore, 627 F.2d at 833-834; United States v. Daly, 481 F.2d 28, 29 (8th Cir. 1973); United States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970). As the Seventh Circuit discusses in United States v. Moore, 627 F.2d at 835, tax protesters obviously make no honest or genuine attempt to comply with tax laws. As a result, the government should not have to accept a document that is not intended to give required information as a return. However, the appellate court stated that "A serious problem might be presented if the government *651 took the position that any form with false information on it is not a return." 627 F.2d at 835. That was not the situation there. "It is not the false data which makes these returns defective, but the fact that there is no real attempt to comply with the requirement of filing a return." 627 F.2d at 835. Here the determination must be made as to whether or not the document filed by the taxpayer constituted a tax return. The Supreme Court most recently considered the issue in a context where the taxpayers themselves claimed that their original returns were a nullity for purposes of the statute of limitations. Badaracco v. Commissioner, 464 U.S. at 396-397. Applying the test of Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 79 L. Ed. 264, 55 S. Ct. 127 (1934), the Supreme Court rejected the argument. In Badaracco the taxpayers filed a fraudulent original return and subsequently filed a nonfraudulent amended return. The issue was which return started the running of the statute of limitations. The Supreme Court held that, although fraudulent, the original returns "purported to be returns, were sworn to as such, and appeared on their *652 faces to constitute endeavors to satisfy the law." Badaracco v. Commissioner, 464 U.S. at 397. Thus, those returns were not nullities under the Zellerbach test, where the Supreme Court held that: Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such * * *, and evinces an honest and genuine endeavor to satisfy the law. [Zellerbach Paper Co. v. Helvering, 293 U.S. at 180.]
We reached the same conclusion here. On its face, petitioner's return purports to be a return and was sworn to as such. That the document does not suffer from perfect accuracy or completeness should not render it a legal nullity. Petitioner reported his name, address, social security number, proper filing status (single), all of his taxable income except for three small items (see supra note 7), the proper number of exemptions (one), and the amount of Federal income tax withheld from his wages. Thus, respondent had sufficient data to calculate petitioner's tax liability. Petitioner had not tampered with or altered the forms in any way aside from providing frivolous Schedule *653 C information. And, as noted earlier, he signed the Form 1040 under the jurat. While petitioner's return contained preposterous and frivolous items that common sense dictated must be disregarded, and while his return also omitted three small items of income, the proper recourse for those derelictions of the taxpayer's duty is the negligence addition which the Court has sustained above, rather than treating petitioner's Form 1040 as a legal nullity amounting to a failure to file a return. Accordingly, we hold for petitioner on the delinquency addition under section 6651(a)(1). Finally, we address respondent's motion for a penalty to the United States under section 6673. The Court, in its order of August 15, 1991, warned petitioner as follows: if petitioner fails to comply with this order [to respond to respondent's request for admissions] or otherwise continues to advance frivolous arguments and positions in this tax case, the Court, on its own motion, will consider imposing a penalty under section 6673.
Petitioner failed to comply with the Court's order and after issuance of an order to show cause, dated September 11, 1991, the Court imposed sanctions by deeming the *654 paragraphs of respondent's request for admissions as admitted. At trial on October 3, 1991, petitioner again moved for a continuance and for appointment of counsel to represent him, motions that the Court had already denied earlier. Respondent at trial filed the pending motion. After trial, on November 7, 1991, petitioner again moved for a continuance and moved for the Court to set aside its earlier sanctions order. Petitioner's latest motions, again based on the purported unavailability of his records and the "unsettled issues" in other tribunals as discussed below, were also denied. Section 6673 provides that whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer "primarily for delay," or that "the taxpayer's position in such proceeding is frivolous or groundless," or that "the taxpayer unreasonably failed to pursue available administrative remedies," the Court may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. Petitioner's whole course of conduct in this proceeding has been one of delay and refusing to address any issues in this tax case. Petitioner's argument or position, *655 if it can be called such, is frivolous. What petitioner seems to be arguing is that he has some type of private arrangement with the Internal Revenue Service that he can defer payment of his taxes for 1988 and other years and somehow offset the taxes he owes against certain amounts he claims he is entitled to recover from the United States in other nontax proceedings pending in other tribunals. The Forms W-4 and various communications in regard to the number of withholding allowances were offered by petitioner in support of this purported arrangement. These materials fall woefully short of establishing any such private arrangement with the Internal Revenue Service. Moreover, if any agent of the Internal Revenue Service purported to agree to any such private arrangement (and the Court is satisfied that none did), that agent clearly would be acting beyond the scope of his authority, and his purported "agreement" would not be binding on the United States. Darling v. Commissioner, 49 F.2d 111 (4th Cir. 1931), affg. 19 B.T.A. 337 (1930); Blum Folding Paper Box Co. v. Commissioner, 4 T.C. 795, 799 (1945). Respondent is not bound *656 by the erroneous legal advice of his agents. Dixon v. United States, 381 U.S. 68, 14 L. Ed. 2d 223, 85 S. Ct. 1301 (1965); Automobile Club v. Commissioner, 353 U.S. 180, 1 L. Ed. 2d 746, 77 S. Ct. 707 (1957). Not to belabor the matter, but this Court is satisfied that this purported private arrangement is a figment of petitioner's imagination. What seems to be the heart of the matter is that, in this and an earlier Tax Court case filed by this petitioner, [9] he has resolutely refused to address the tax issues over which this Court has jurisdiction. Instead, petitioner argues about a foreclosure on his home by the Veterans' Administration, the legality of his eviction from that home, the purported seizure of his records when he was evicted, his allegedly illegal separation from his Federal employment, his alleged denial of certain worker's benefits, and other as yet "unsettled issues" with various departments and agencies of the United States Government and in various law suits in state and local courts of Illinois. This Court is a court of limited jurisdiction as specifically authorized by Congress, and we cannot extend that jurisdiction to resolve those other matters pending before other tribunals. *657 Sec. 7442; Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 88 L. Ed. 139, 64 S. Ct. 184 (1943); Naftel v. Commissioner, 85 T.C. 527, 529 (1985); Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 179 (1960). However, because of those other "unsettled issues," petitioner has refused to take any steps to prepare his case in this Court, continually invoking the claim that his records have been illegally seized by the Veterans' Administration and that, without those records, he cannot go forward with this case. The Court regards his claims about the unavailability of his records as frivolous and merely an excuse to delay this case. Petitioner does not have, and has never had, any books and records (in his possession, in the possession of the Veterans' Administration, or any other place) that would show that he incurred legal and professional services expenses in 1988 in the amount of *658 $ 111,111,111,111. This Court knows that, and petitioner knows that. As to documentation and records that do exist, such as his W-2 Forms from John Deere Harvester, Forms 1099 from other payers of nonemployee compensation, etc., such materials could be obtained from other sources, even assuming petitioner's alleged books and records had been improperly taken from him. Respondent apparently obtained the necessary documents to establish petitioner's taxable income. However, both at the administrative level and in this Court, petitioner has refused to cooperate in the determination of his proper tax liability for 1988. We conclude that this proceeding was instituted and has been maintained by petitioner primarily for delay and that petitioner's position or arguments in this case are frivolous and groundless. We express no opinion as to the underlying merits of petitioner's claims in any other tribunal on any nontax matter. However, we conclude that petitioner's position and arguments in this Court, whereby he tries to hold this tax case hostage to the "unsettled issues" in other tribunals, are frivolous and groundless. Accordingly, we will grant respondent's motion and will require *659 petitioner to pay to the United States a penalty in the amount of $ 5,000. To reflect the concession and the above holdings, Decision will be entered under Rule 155. Footnotes
1. At trial the parties filed a stipulation of settled issues wherein respondent conceded the addition under section 6661.↩
2. The Court's Findings of Fact are based on the sparse evidentiary record in this case and certain deemed-admitted facts. Petitioner having failed to comply with the Court's direct order to respond to respondent's request for admissions, the Court issued an order to show cause. Upon petitioner's continued failure to comply with the Court's order and failure to respond to the request for admissions, the Court made the order to show cause absolute. The Court imposed sanctions whereby the requests for admissions were deemed admitted and such deemed-admitted facts are treated as established facts in this proceeding.↩
3. The Court notes that, even without the deemed-admitted facts, petitioner's claims would have been rejected by the Court as preposterous on their face.↩
4. That alleged net profit of $ 11,111,111,111 was netted against the alleged net loss of ($ 111,111,111,111) to produce the alleged net business loss of ($ 100,000,000,000) claimed on line 12 of the Form 1040.↩
5. Here no amount of tax was shown on petitioner's Form 1040, and the "underpayment" for purposes of section 6653(a)(1) means the deficiency (sec. 6653(c)↩), which deficiency is computed without taking into account any withheld tax (sec. 6211(a) and (b); sec. 31).
6. That addition was computed on the net amount due of $ 2,686.44. Unlike the negligence addition which is computed on the deficiency amount, the addition for failure to file a return or for late filing of a return is computed on a net amount and takes into account previous payments, including a payment through withholding. Sec. 6651(b)↩.
7. The amount of $ 43,635.61 of petitioner's taxable income has been established through the deemed-admitted facts. Respondent also determined the following additional items of taxable income: American Capital Pace Fund
$ 154
Common Sense Growth Fund
4
Deere Harvester Credit Union
73
Petitioner having failed to present any evidence, the Court must also sustain respondent as to these additional amounts.↩
8. For 1988 section 6653(a)(3)↩ expressly defines the term "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" as including any "careless, reckless, or intentional disregard."
9. Petitioner has another case pending in the Tax Court, Docket No. 16938-89.↩